United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Marc Baron, | ) |
|             Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 16-25118-Scola |
| | ) |
| Acasta Capital, and others, | ) |
|             Defendants. | |

**Order Granting Motion to Dismiss**

The Plaintiff Marc Baron, proceeding pro se, brings this suit against the Defendant Acasta Capital ("Acasta") based on a dispute over a cruise vacation business venture. Acasta has filed a motion to dismiss (Mot., ECF. No. 16), arguing that it is not subject to personal jurisdiction in Florida.[1] For the reasons that follow, the Court **grants** the motion **(ECF No. 16)**.

## 2. Factual Background

Baron, a Florida resident, seeks $57,730,313.00 in damages based on seven causes of action in his amended complaint ("Complaint"): two counts for breach of contract; breach of fiduciary duty; loss of anticipated profits; fraud; tortious interference; and intentional infliction of emotional distress. (Am. Compl. ¶¶ 97, 101, 108, 114, 122, 129, 136, ECF No. 12.) Baron raises these claims against Acasta, a Canadian corporation with its principal place of business in Toronto, Canada, and several other Defendants. (Entwistle Aff. ¶ 3, Mot. Ex. A, ECF No. 16-1.) The Court previously dismissed the other Defendants, Acasta Cuba Capital, Mark Entwistle, Juanita Montalvo, Husain Chinikamwala, and Robert Muse. (ECF No. 25.) Mark Entwistle is the Managing Director of Acasta. (Entwistle Aff. ¶ 1.)

On October 28, 2015, Baron and Acasta Cuba Capital ("Acasta CC"), an affiliate of Acasta, entered into a Memorandum of Understanding ("MOU") that focuses on business development opportunities in Cuba.[2] (*Id.* ¶¶ 9–10; MOU,

---

[1] Acasta also moved to dismiss Baron's complaint under Rule 12(b)(4) for insufficient process and Rule 12(b)(5) for insufficient service of process, but withdrew these service-related arguments in its reply (ECF No. 23 at 1).

[2] The Defendant has attached the MOU to its motion to dismiss. Baron does not dispute the existence of the MOU and, in fact, appears to base his claims on the MOU. (Am. Compl. ¶¶ 26, 91–102.) As such, the Complaint incorporates by reference the MOU. *Cf. M.C. Dean, Inc. v. City of Miami Beach, Florida,* 199 F. Supp. 3d 1349, 1352 (S.D. Fla. 2016) (Altonaga, J.) ("In addressing a Rule 12(b)(6) motion, the Court considers the allegations of the complaint,

Entwistle Aff. Ex. 1, ECF No. 16-1.) The MOU outlined the intentions of the parties regarding the formation of a middle-Caribbean region cruise line, named "Capri Cruises," that would offer an itinerary with various ports in Cuba, Jamaica, and the surrounding region. (Am. Compl. ¶¶ 25, 32.)

The MOU specifically stated that "the provisions described in Articles [B through G] reflect the non-binding proposals among the parties and the provisions described in Articles [H through J] below reflect the binding agreements and obligations among the parties." (MOU art. A, Entwistle Aff. Ex. 1, ECF No. 16-1.) Articles H through J respectively govern confidentiality, choice of law, and exclusive dealing. (*Id.*) The binding "Exclusive Dealing" provision notes that the MOU expires on March 31, 2016, five months after the effective date. (*Id.* art J.) The MOU further notes that with the exception of Articles H through J, "this MOU represents only the parties' current good faith intention to negotiate and enter into the Definitive Documents, and otherwise is not, and is not intended to be, a binding agreement between the parties, and neither party will have any liability to the other party if such party fails to execute Definitive Documents for any reason." (*Id.* art. K)

According to Acasta, eight months after the execution of the MOU, Acasta CC elected to terminate the MOU upon learning that Baron did not have governmental clearances required to conduct business in Cuba. (Entwistle Aff. ¶ 13.) In his Complaint, Baron alleges that Acasta CC's termination of the MOU constituted a breach of the terms of the MOU.[3] Baron also alleges that partners of Acasta and Acasta CC, Entwistle and Montalvo, engaged Baron to "discuss the project, review the business planning documents, discuss partnership strategies and determine the next steps" and expend "professional hours and financial resources and engag[e] with service providers." (Am. Compl. ¶¶ 19–20.)

### 3. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1324 (M.D. Fla. 2011). First, the court must determine whether the applicable state long-arm statute is satisfied.

---

exhibits attached or incorporated by reference, and exhibits attached to the motion to dismiss if they are central to the plaintiff's claim and undisputed." (citing *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005))).

[3] Although the Court cannot determine whether Acasta is the correct entity to respond to this lawsuit, Acasta does not appear to dispute that Acasta CC's actions can be imputed to Acasta.

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark*, 810 F. Supp. 2d at 1324; *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

A plaintiff must allege sufficient material facts to support long-arm jurisdiction. *Future Tech.*, 218 F.3d at 1249. The burden then "shifts to the defendant to make a prima facie showing of the inapplicability of the statute." *Id.* (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)). The defendant must file, and the Court will consider, affidavits refuting the applicability of the long-arm statute. *Chitoff v. CashCall, Inc.*, No. 0:14-CV-60292, 2014 WL 6603985, at *1 (S.D. Fla. Nov. 7, 2014) (Rosenberg, J.) ("A defendant wishing to contest the allegations of a complaint concerning jurisdiction . . . must file affidavits in support of his position." (quoting *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502–03 (Fla. 1989))). Once the defendant has successfully challenged the plaintiff's allegations through this showing, "[t]he burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be contained." *Id.*; *see also Future Tech.*, 218 F.3d at 1249 ("[T]he plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." (quoting *Prentice*, 779 F. Supp. at 583)).

A court must liberally construe complaints filed by pro se litigants, and "however inartfully pleaded, [those complaints] must be held to less stringent standards than formal pleadings drafted by lawyers."[4] *Stephens v. DeGiovanni*, 852 F.3d 1298, 1319 (11th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, "the leniency afforded pro se litigants does not give courts license to serve as de facto counsel or to rewrite an otherwise deficient pleading in order to sustain an action." *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 717 n.3 (11th Cir. 2011).

### 4. Analysis

#### A. Initial Considerations

A court has the discretion to dismiss a complaint for failure to comply with the pleading rules. *Heard v. Nix*, 170 F. App'x 618, 619–20 (11th Cir.

---

[4] The Court notes, however, that Baron represented in his affidavit in opposition to Acasta's motion to dismiss that he has a juris doctor degree. (Baron Aff. Ex. C at 35, ECF No. 22.)

2006). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Here, the Complaint fails to comply with Rule 8(a)(2) because it constitutes a classic shotgun pleading. A typical shotgun pleading contains several counts, each one incorporating by reference the allegations of its predecessor. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) ("The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."). Such a complaint creates a situation where most of the counts contain irrelevant factual allegations and legal conclusions, leaving the court to sift through irrelevancies to determine the sufficiency of a claim. *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 (11th Cir. 2002).

Here, the Complaint contains seven counts. Each count incorporates all of the previous allegations set forth in earlier paragraphs. (Am. Compl. ¶¶ 90, 99, 103, 110, 116, 124, 131.) As a result, this Court could dismiss the Complaint in its entirety as a shotgun pleading. However, because Baron has not and cannot allege sufficient facts to satisfy personal jurisdiction, this Court will address the merits of the Defendant's motion to dismiss.

### B. Motion to Dismiss

Acasta challenges the Court's personal jurisdiction over it, arguing (1) Baron has not established facts that trigger Florida's long-arm statute; and (2) exercising jurisdiction over Acasta would not comport with the requirements of due process or traditional notions of fair play and substantial justice. (Mot. at 8–13.) Baron opposes Acasta's motion, arguing that personal jurisdiction over Acasta is proper because Acasta has satisfied Florida's long-arm statute by (1) committing tortious acts in Florida; and (2) conducting business in Florida. (Resp. at 5–7, ECF No. 21.)

The Court notes that Baron filed an unsigned memorandum of law in opposition to the Defendant's motion to dismiss (ECF No. 21) and an unsigned and unsworn affidavit in opposition to the motion to dismiss (ECF No. 22). Both the memorandum and the affidavit are inadmissible—the memorandum does not comply with Federal Rule of Civil Procedure 11(a), and the affidavit does not comply with 28 U.S.C. § 1746. Notwithstanding these issues, the Complaint does not sufficiently allege personal jurisdiction.

In considering the first step of the inquiry, the Court must determine whether the Complaint alleges facts sufficient to establish that Acasta's activities meet one or more of the enumerated acts listed in Florida's long-arm statute, section 48.193(1), Florida Statutes (2015). Baron argues that Acasta's activities have triggered application of the following sections of Florida's long-arm statute:

> 2. Committing a tortious act within this state.
>
>      . . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury . . .:
>
>> a. The defendant was engaged in solicitation or service activities within this state . . . .

Fla. Stat. § 48.193(1)(a). (Resp. at 5.) Baron has failed to establish sufficient jurisdictional facts that would support the application of either subsection 2 or 6 of Florida's long-arm statute.

### (1) The Commission of a Tort in Florida

Subsection 2—the commission of a tortious act within the state—does not provide a viable path to personal jurisdiction. Under Florida law, when the basis for personal jurisdiction is the commission of a tort within the state, courts must first determine whether the complaint states a cause of action. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.,* 598 F.3d 802, 808 (11th Cir. 2010) (citations omitted); *Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002) (noting that the "threshold question" that must be determined when the basis for personal jurisdiction is the commission of a tort in Florida is whether the allegations of the complaint state a cause of action). If the Complaint fails to state a cause of action, then subsection 2 does not provide a basis for applying Florida's long-arm statute. Therefore, the Court will analyze whether the Complaint states a cause of action against Acasta. In doing so, a district court must construe all reasonable inferences in favor of the plaintiff. *PVC Windoors, Inc.,* 598 F.3d at 810.

#### (a) Breach of Contract

Counts 1 and 2 of the Complaint allege variations of a cause of action for breach of contract. (Am. Compl. ¶¶ 90–102.) Under Florida law, the elements required to establish a breach of contract claim are: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009)

(citing *Friedman v. N.Y. Life Ins. Co.,* 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008)).

As an initial matter, Baron appears to base his breach of contract claims on the MOU, which he failed to attach to the Complaint. As noted above, the Court can consider the MOU because it is central to Baron's claims and undisputed. *M.C. Dean,* 199 F. Supp. 3d at 1352. The Court views the facts as delineated in the MOU as controlling. *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *see also Simmons v. Peavy-Welsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

Based on the express provisions of the MOU, Baron cannot allege the existence of a contract. "Contracts . . . are bargained-for agreements created through a manifestation of mutual assent, typically through offer and acceptance, supported by the exchange of consideration." *Slora v. Sun %2Cn Fun Fly-In, Inc.,* 173 So. 3d 1099, 1103 (Fla. Dist. Ct. App. 2015) (citing Restatement (Second) of Contracts §§ 1, 17, 22 (1981)). "[W]here the essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract." *CSX Transp., Inc. v. Prof'l Transp., Inc.,* 467 F. Supp. 2d 1333, 1340 (M.D. Fla. 2006) (collecting Florida appellate cases). Such an agreement constitutes an "agreement to agree," which is unenforceable under Florida law. *Id.* Further, if the parties do not intend an agreement to be binding, then they have not entered into a contract. *Cf. Lafarge N. Am., Inc. v. Matraco Colorado, Inc.,* No. 07-80112-CIV, 2008 WL 2277503, at *4 (S.D. Fla. May 30, 2008) (Hurley, J.) ("Unless the parties intended to be bound by statements made during these discussions, which they memorialized in their Letter of Intent, they did not enter into a contract to pursue the contemplated business venture–*regardless* of the level of specificity or detail discussed and agreed upon." (citing *Doll v. Grand Union Company,* 925 F.2d 1363 (11th Cir. 1991))); *see also St. Joseph Hosp., Augusta, Georgia, Inc. v. Health Mgmt. Assocs., Inc.,* No. CV 107-104, 2011 WL 1225577, at *10 (S.D. Ga. Mar. 30, 2011), *aff'd,* 705 F.3d 1289 (11th Cir. 2013) (collecting cases where no binding contract existed because the parties expressly agreed to execute a subsequent contract).

Even considering that the parties intended certain provisions to be binding, the MOU formed a non-binding agreement that accomplished no more than expressing "non-binding proposals among the parties" and an intention "to provide the basis for" a subsequent agreement. (MOU arts. A, K.) Article G, one of the non-binding provisions, expressly states, "The precise shareholding agreement and other terms will be determined pursuant to a formal agreement and other documents, drafted by counsel and reasonably acceptable to the parties (the "Definitive Documents")." (*Id.* art. G.) The MOU, as a whole, expresses "only the parties' good faith intention to negotiate and enter into the Definitive Documents . . . ." (*Id.*) In other words, the MOU expresses an agreement to agree, which cannot constitute an enforceable contract under Florida law.

Baron suggests that he also "gave . . . oral . . . agreements . . . ." (Am. Compl. ¶ 91.) However, the Court cannot determine from the allegations that any agreement other than the MOU exists. Any conversations that Baron may have sustained *before* entering into the MOU should have been subsumed into the MOU, and any conversations that Baron may have had *after* entering the MOU should have been memorialized in the purported "Definitive Documents."

Thus, Baron fails to allege the existence of a contract—without which he cannot state a claim for breach of contract.

*(b) Breach of Fiduciary Duty*

Count 3 of the Complaint alleges a cause of action for breach of fiduciary duty. (Am. Compl. ¶¶ 103–109.) Under Florida law, the elements of a claim for breach of a fiduciary duty are 1) the existence of a fiduciary duty; 2) a breach of that duty; and 3) damages proximately caused by the breach. *Oginsky v. Paragon Props. of Costa Rica LLC,* 784 F. Supp. 2d 1353, 1375 (S.D. Fla. 2011) (King, J.) (citing *Gracey v. Eaker,* 847 So. 2d 348, 353 (Fla. 2002)). "Under Florida law, a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties." *Detwiler v. Bank of Central Florida*, 736 So. 2d 757, 758–59 (Fla. Dist. Ct. App. 1999). Likewise, where parties engage in arms-length business negotiations, Florida law does not impose a fiduciary relationship. *W. Indies Network-I, LLC v. Nortel Networks, (CALA) Inc.*, 243 F. App'x 482, 485 (11th Cir. 2007) ("But the record allows the imposition of no implied-in-law fiduciary obligations. . . . Instead, the record shows an arms-length relationship between [the plaintiff] and [the defendant] with each acting to further its own business interests. Parties dealing at arm's length owe no duty to protect or benefit the other."); *see also Taylor Woodrow Homes Inc. v. 4/46-A*

*Corp.,* 850 So. 2d 536, 541 (Fla. Dist. Ct. App. 2003) ("When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other.").

Here, Baron provides only conclusory statements to allege that Acasta owed a fiduciary duty to him: "Acasta . . . had a fiduciary relationship with Baron based on trust and confidence, that derived from the facts that Acasta . . . agreed to act in both standard of Good Faith and Best Efforts;" and "[Acasta] voluntarily accepted and entered into an agreement that was bonded with trust and confidence . . . [and] did knowingly conspire to breach said fiduciary duty to act to the highest standard of best efforts." (Compl. ¶¶ 104–105.) The allegations clearly rely on the provisions of the MOU to allege the existence of a fiduciary duty. Assuming that the MOU formed a binding contract, which it did not, Baron cannot allege the existence of a fiduciary duty based on a contractual relationship. *Detwiler*, 736 So. 2d at 758–59. Nor can Baron fabricate a fiduciary duty where the parties engaged in quasi-formal business negotiations in an effort to each "further its own business interests." *Nortel*, 243 F. App'x at 485.

Accordingly, Baron cannot state a claim for fiduciary duty.

### (c) Loss of Anticipated Profits

Count 4 of the Complaint alleges "loss of anticipated profits." (Compl. ¶¶ 110–115.) No such cause of action exists under Florida law. Instead, "loss of anticipated profits" merely forms one kind of damages that a party could allege to recover after commission of a tort or other wrongful act. *See, e.g.*, *ITT Hartford Ins. Co. of the Se. v. Owens*, 816 So. 2d 572, 579 n.6 (Fla. 2002) ("The trial judge obviously perceived that, based on the testimony and evidence presented as to loss of anticipated profits, he had committed error in the particulars mentioned. Since those errors relate only to the issue of damages, it is proper that the new trial be limited to the issue of damages only." (quoting *Bush v. Trans World Airlines, Inc.,* 358 So. 2d 543, 544 (Fla. 1978))); *Totale, Inc. v. Smith*, 877 So. 2d 813, 816 (Fla. Dist. Ct. App. 2004) ("[A]nticipated profits may constitute an element of damages . . . where the plaintiffs pursue an action for both breach of contract and for fraud in inducing the contract.") (citation and internal quotations omitted); *Nordyne, Inc. v. Florida Mobile Home Supply, Inc.,* 625 So. 2d 1283, 1287 (Fla. Dist. Ct. App. 1993) (holding that the trial court properly admitted evidence of "lost future profits" as part of damages in a fraud claim). Baron recognizes as much by alleging that his purported lost profits resulted from Acasta's "breach of contract, fiduciary duty[,] and lack of

best efforts . . . ," which cause him to suffer "general and consequential damages, including loss of anticipated profits." (Am. Compl. ¶ 114.)

Thus, Baron cannot state a claim for "loss of anticipated profits."

*(d) Fraud*

Count 5 of the Complaint alleges a cause of action for fraud. (Am. Compl. ¶¶ 116–123.) "The essential elements of a fraud claim are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Cohen v. Kravit Estate Buyers, Inc.*, 843 So. 2d 989, 991 (Fla. Dist. Ct. App. 2003). Fraud cases rest on highly specific circumstances. *Id.*

As a result, fraud claims in federal court must satisfy the more stringent pleading standards of Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.,* 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted). The Rule's "particularity" requirement is not satisfied by "conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *Id.* To meet this standard, the Complaint needs to identify: the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud. *Id.*

Baron alleges that Acasta intentionally misrepresented "statements and financial models" and "misrepresented the legal services and attorney client relationship of Robert Muse." (Am. Compl. ¶ 117.) Muse allegedly served as "sanctions counsel" to Capri Cruises, although as best as the Court can determine, some unidentified person retained Muse to provide certain unexplained legal services. (*Id.* ¶¶ 62, 66.) Apparently, Muse promised to "establish a legal opinion that said intended business was compliant . . . ." (*Id.* ¶ 60.) From these allegations, it is impossible to discern what precise "statements" were made and by whom, what relationship may or may not have

existed between Acasta and Muse, how Acasta could bear any liability for actions taken or not taken by a third-party, and whether any party at all benefits from these "statements." Baron fails to identify with sufficient particularity any of the allegedly fraudulent representations made by Acasta, and thus fails to satisfy Rule 9(b).

Moreover, assuming that Acasta misrepresented its relationship with Muse—as Baron appears to allege—Baron cannot claim that such a misrepresentation constituted a material fact upon which Baron relied in entering into business negotiations with Acasta. Further, even if Baron could claim that promises allegedly made by Muse with respect to "establish[ing] a legal opinion" caused Baron to enter into business negotiations with Acasta, Baron cannot use those allegedly false "promises" to state a claim of fraud against Acasta. Accordingly, Baron has not stated a cause of action for fraud.

*(e) Tortious Interference with a Business Relationship*

Count 6 of the Complaint alleges a cause of action for tortious interference with a business relationship. (Am. Compl. ¶¶ 124–130.) Tortious interference with a business relationship under Florida law requires: 1) the existence of a business relationship under which the claimant has rights; 2) the defendant's knowledge of the relationship; 3) an intentional and unjustified interference with the relationship; and 4) damage to the claimant caused by the interference. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). "For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 385–86 (Fla. Dist. Ct. App. 1999). Florida courts have held that the plaintiff must prove that the third party interfered with a contract by "influencing, inducing or coercing one of the parties to . . . breach the contract, thereby causing injury to the other party." *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. Dist. Ct. App. 1999) (internal quotations and citations omitted).

 Baron claims that Acasta and others interfered in Baron's attorney-client relationship with Oliver Krischik of the firm Price Benowitz. (Am. Compl. ¶¶ 125–26.) Specifically, Baron claims that Acasta and others "attempted to pressure Oliver Krischik to release information protected under Attorney/Client privilege by writing" to Price Benowitz. (*Id.* ¶ 127.) Baron attached the purportedly tortious correspondence, from Acasta's general counsel, to Baron's affidavit in support of his response to the motion to dismiss. (ECF No. 22.) As such, the Court reviewed the content of the correspondence, which clearly contradicts Baron's allegations. The purportedly tortious correspondence

consists of nothing more than an attorney's request for "regulatory filings, applications, or other representations" that are available to the public. (ECF No. 22 at 3.)

The Court cannot comprehend how these allegations could possibly support a claim for tortious interference with a business relationship. Without even addressing the merits of the remainder of Baron's tortious interference claim, Baron cannot allege that tortious interference resulted from a simple request for publicly available documents or that such a request caused Baron any harm.

### (f)  Intentional Infliction of Emotional Distress

Count 7 of the Complaint alleges a cause of action for intentional infliction of emotional distress ("IIED").[5] (Am. Compl. at 1, 20.) Baron contends that the Defendants "knowingly and willingly conspired and agreed to engage in a scheme to negligently inflict emotional distress upon Baron" and "did the acts and things alleged pursuant to, and in furtherance of, the scheme to inflict emotional distress upon Baron." (*Id.* ¶¶ 134—35.) These allegations indicate a cause of action for IIED, notwithstanding Baron's use of the word "negligent."

To state a claim for IIED in under Florida law, a plaintiff must show: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) that the conduct caused emotional distress; and (4) that the distress was severe. *Nettles v. City of Leesburg Police Dep't,* 415 Fed. App'x. 116, 122 (11th Cir. 2010) (quoting *Hart v. United States,* 894 F.2d 1539, 1548 (11th Cir. 1990)). Notably, the cause of action for IIED is "sparingly recognized by the Florida courts." *Vamper v. United Parcel Service, Inc.*, 14 F. Supp. 2s 1301, 1306 (S.D. Fla. 1998) (King, J.). A plaintiff alleging IIED faces an extremely high burden, as Florida courts have repeatedly found a wide spectrum of behavior insufficiently "outrageous." "Outrageous" conduct is that which "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Rubio v. Lopez,* 445 Fed App'x. 170, 175 (11th Cir. 2011).

---

[5] Although Baron titled this claim "Negligent Infliction of Emotional Distress," the introductory title at the outset of the complaint as well as the substantive paragraphs make clear that Baron attempts to allege a cause of action for intentional infliction of emotional distress. Certainly, Baron cannot state a cause of action for *negligent* infliction of emotional distress under Florida law because he does not and cannot allege that he either suffered or witnessed a "physical impact." *Willis v. Gami Golden Glades, LLC,* 967 So. 2d 846, 850 (Fla. 2007); *see also Seybold v. Clapis*, 966 F. Supp. 2d 1312, 1315 (M.D. Fla. 2013).

Here, Baron claims that he "dedicated all of his time, financial resources, and professional reputation" to his endeavor with Acasta, and that Acasta breached its agreements with Baron. (Am. Compl. ¶ 133.) This run-of-the-mill business dispute simply cannot rise to the level of outrageousness required under Florida law. Thus, Baron cannot state a claim for IIED.

Baron has failed to allege that Acasta committed a tortious act in Florida. Thus subsection 2 of Florida's long-arm statute does not provide this Court with a basis for personal jurisdiction over Acasta.

### (2) Causing Injury to Persons or Property Within the State

In order for the Court to exercise jurisdiction over Acasta, then, Baron must allege facts to bring this complaint within subsection 6 of Florida's long-arm statute—specifically, facts alleging that Acasta caused injury to Baron within the state of Florida arising out of Acasta's acts or omissions outside the state by engaging in solicitation or service activities within the state. Fla. Stat. § 493.193(1)(a)6. "Injury," as used in Florida's long-arm statute, cannot be a "mere economic injury." *Sculptchair, Inc.,* 94 F.3d at 629 ("[M]ere economic injury without accompanying personal injury or property injury does not confer personal jurisdiction over nonresident defendants under section 48.193(1)[(a)6.]."); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.,* No. 09-CV-61436, 2010 WL 1531489, at *13 (S.D. Fla. Apr. 16, 2010) (Cohn, J.); *Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.,* 511 So. 2d 992, 994 (Fla. 1987). Further, although caselaw provides no guidance on this analysis, "engaged in solicitation" at a minimum requires the individual or entity to initiate contact to obtain something in return. *See* Black's Law Dictionary (10th ed. 2014) (defining "solicitation" as "[t]he act or an instance of requesting or seeking to obtain something; a request or petition[; and] . . . [a]n attempt or effort to gain business").

Here, Baron predominantly alleges economic injury. The complaint repeats under each count that Baron "suffered general and consequential damages, including income from his professional time, expenses in preparing . . . for commercial operations, [and] losses from payments for services [sic] providers . . . ." (Am. Compl. ¶¶ 97, 101, 108, 122, 129.) In Count 4, Baron alleges only "loss of anticipated profits" as damages, and in Count 7, Baron alleges that he "suffered general and consequential damages, health concerns, failed marriage[,] and loss of good will . . . ." (*Id.* ¶¶ 114, 136.) Thus, only in Count 7 for IIED does Barn allege an injury beyond economic injury.

The long-arm statute, however, requires a showing that the defendant's actions "caus[e] injury," not merely that the plaintiff allege injury. In the

present case, the Court cannot allow Baron's count for IIED—a claim that remains highly unfavored under Florida law—to provide this Court with personal jurisdiction over Acasta. Baron raises his several claims based on a failed business relationship and alleges essentially economic losses. A conclusory, ill-favored, and deficient IIED claim does not change Baron's complaint as a whole, and does not bring Acasta within this Court's jurisdiction.

Lastly, based on the allegations in the complaint, Acasta did not engage in solicitation or service activities in Florida. In fact, Baron alleges that "Baron . . . contacted Mark Entwistle . . . " and "Baron . . . agreed to a meeting . . . in Morristown, New Jersey . . . ." (*Id.* ¶¶ 11, 19.) Acasta's sole action "seeking to obtain something" was to "request[] a follow-on call[.]" (*Id.* ¶ 17.) Entwistle did attend a meeting in Miami, Florida, on behalf of Acasta, but *Baron* arranged that meeting. (*Id.* ¶ 32.) These allegations do not establish that Acasta engaged in solicitation or service activities in Florida.

Even if somehow the Complaint properly alleged personal jurisdiction over Acasta, which it did not, Acasta made a successful prima facie showing through affidavits that it has not engaged in solicitation or service activities in Florida. *See Chitoff*, 2014 WL 6603985, at *1. The affidavit of Acasta's Managing Director, Entwistle, set forth the following sworn statements: "Acasta does not maintain any offices, employees, or agents in Florida;" "Acasta does not manufacture, sell, lease, solicit orders, or otherwise conduct business in Florida;" "Acasta is not licensed to transact business in Florida;" "Acasta has no clients in Florida, derives no revenue from Florida, and pays no taxes to the state of Florida." (Entwistle Aff. ¶¶ 5–8, ECF No. 16-1.)

Baron, on the other hand, failed to rebut those statements through substantiating affidavits. Certainly, Baron submitted an unsigned and unsworn affidavit. (ECF No. 22.) But even if the Court were to consider Baron's unsworn statements, the affidavit neither refutes Acasta's showing of the inapplicability of Florida's long-arm statute nor substantiates "a basis upon which jurisdiction may be obtained." *Venetian Salami*, 554 So. 2d at 502. Further, in Baron's response to the motion to dismiss, he asserts that this Court has jurisdiction over Acasta because *Baron* is a resident of Miami, Florida. (Resp., ECF No. 21 at 6.) This allegation simply does not allow the Court to exercise personal jurisdiction over Acasta under Florida's long-arm statute. Baron has not carried his burden. *Chitoff*, 2014 WL 6603985, at *1; *Future Tech.*, 218 F.3d at 1249.

Accordingly, the Complaint fails to plead sufficient facts to satisfy subsection 6 of Florida's long-arm statute, and Baron fails to rebut Acasta's showing that the Florida long-arm statute does not apply.

### (3) Due Process Considerations

Because the Court has determined that no facts exist to trigger Florida's long-arm statute, the Court need not decide the constitutional issue. Thus, the Court declines to engage in an analysis of whether exercising jurisdiction over Acasta would comport with the requirements of due process or traditional notions of fair play and substantial justice. *Verizon Trademark*, 810 F. Supp. 2d at 1324; *see also Scott v. Lance Aviation, Inc.*, No. 8:09-CV-986-T-33TBM, 2010 WL 3075714, at *6 (M.D. Fla. Aug. 5, 2010) ("The Court need not decide this constitutional issue, however, because [the plaintiff] was unable to prove that the long-arm statute was satisfied.").

### 1. Conclusion

Accordingly, the Court **grants** Acasta's motion to dismiss (**ECF No. 16**) and **dismisses** the amended complaint (**ECF No. 12**). Any other pending motions are **denied** as moot. The Clerk is directed to **close** this case.

**Done and ordered** in chambers, at Miami, Florida on July 18, 2017.

98

Robert N. Scola, Jr.
United States District Judge